UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRIN LaPINE,

                    Petitioner,                          Case No. 15-11206

v.                                                       HON. MARK A. GOLDSMITH

KENNETH ROMANOWSKI,

                    Respondent.
_____/

**OPINION & ORDER**
**(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING**
**CERTIFICATE OF APPEALABILITY, AND (3) DENYING LEAVE TO PROCEED IN**
**FORMA PAUPERIS ON APPEAL**

Petitioner Darrin LaPine, a Michigan prisoner, filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1).  Petitioner pled no contest in Michigan's Chippewa County Circuit Court to aggravated domestic assault – second offense, Mich. Comp. L. § 750.81a(3).  The court sentenced him as a fourth-time habitual felony offender to a year in jail followed by four years of probation.  Before his release from jail, the court determined after a hearing that Petitioner violated the terms of his probation when he assaulted another inmate at the jail.  The court resentenced Petitioner to a prison term of 3-15 years.

The petition and supplement raise a total of 36 claims attacking both Petitioner's original no contest plea and the revocation of his probation. For the reasons explained below, the Court denies the petition because none of the claims merits habeas relief.  The Court also denies Petitioner a certificate of appealability and denies Petitioner leave to proceed in forma pauperis on appeal.

# I. BACKGROUND

Petitioner's underlying conviction arose from acts of domestic violence that he committed against his wife.  On August 24, 2010, following a preliminary examination, Petitioner was arraigned on a seven-count information charging him with torture, three counts of assault with intent to do great bodily harm, interfering with electronic communications, and two misdemeanor counts of domestic violence.  Mich. Ct. App. 309429 at PageID.666–669 (Dkt. 8-22).  Petitioner was also notified that he was being charged as a second-time domestic offender and as a fourth-time habitual felony offender.  Id.  Petitioner's counsel waived the reading of the criminal information.  Id. at PageID.664–665, 668.

 On September 6, 2011, Petitioner signed a written plea agreement.  The agreement stated that he would plead no contest to "Agg. Domestic Violence, Second Offense" and "Habitual Offender 4th Offense – 15 yr."  Id. at PageID.672.  It further stated that Petitioner would serve "12 months county jail.  D receives no credit for time spent in jail while on felony parole and/or under the jurisdiction of DOC.  4 years probation.  D must serve probation in either Emmet or Cheboygan County.  D must not leave county of probation w/o consent of probation officer.  No contact w/victim for 4 years."  Id.

The trial court held a plea hearing on the same date.  Defense counsel placed the terms of the written agreement on the record.  9/6/11 Tr. at PageID.369 (Dkt. 8-10).  The prosecutor indicated that Petitioner's prior domestic assault conviction for assault with intent to commit great bodily harm would make the instant aggravated domestic assault a two-year felony and that the fourth-time habitual felony offender charge would make the instant assault a 15-year felony.  Id. at Page ID.370.  The court again placed the terms of the plea agreement on the record, and Petitioner indicated his understanding.  Id. at Page ID.371.

The trial court reiterated the terms of the agreement to Petitioner.  Id. at Page ID.371–374. Petitioner denied that he had any questions regarding the terms of the agreement.  Id.  After the court expressed concern regarding the requirement that Petitioner live in Emmet or Cheboygan while on probation after his release from jail, Petitioner indicated that he had a place to live in both of those counties, and he agreed to that condition of the plea agreement.  Id. at Page ID.372–376.

Petitioner was then placed under oath.  Id. at PageID.376.  The court again informed Petitioner of the charges and penalties, and he indicated his understanding.  Id. at PageID.377.  The court then informed Petitioner of the rights that he was waiving by entering his plea, and Petitioner indicated his understanding.  Id. at Page ID.377–379.  The court also informed Petitioner of the maximum penalty that he faced—15 years—and explained to Petitioner that he would be giving up any claim that it was not his free choice to enter the plea.  Id. at Page ID.379–380.  Petitioner acknowledged that he was waiving any claim that his plea was the result of promises, threats, or suggestions not disclosed on the record.  Id. at Page ID.379, 381.  He indicated his desire to enter a no contest plea as laid out in the plea agreement.  Id. at Page ID.380.  The court referred to a Michigan State Police report to establish a factual basis.  Id. at Page ID.381–383.  Petitioner agreed to his prior felony convictions for purposes of the habitual offender enhancement.  Id. at Page ID.383–384.  The court accepted the plea, and it found that Petitioner entered the plea freely and voluntarily. Id. at Page ID.384.

The prosecution filed an amended criminal information on September 13, 2011.  Mich. Ct. App. 309429 at Page ID.696–697.  The amended information listed the seven counts contained in the original information that were dismissed in exchange for the plea, and it added a new eighth count that charged Petitioner with domestic violence in violation of Mich. Comp. L. § 750.81(2).

Id.  It added a "second offense notice," citing Mich. Comp. L. § 750.81a(3), the statutory provision for felony aggravated domestic assault.  Id.

Petitioner was sentenced on October 11, 2011, under the terms of his plea agreement, to four years' probation, with the first year to be served in jail.  10/11/11 Tr. at PageID.400–403 (Dkt. 8-11).  In passing sentence, the court informed Petitioner of the conditions of his probation. Among other things, the court instructed Petitioner to "not engage in any assaultive, abusive, threatening, or intimidating behavior."  Id. at PageID.401.  Petitioner received 133 days credit for time served.  Id. at PageID.401–402.

The judgment of sentence indicated that Petitioner was convicted of domestic violence, Mich. Comp. L. § 750.81(2); domestic violence – second offense, Mich. Comp. L. §750.81a(3); and habitual offender – fourth offense, Mich. Comp. L. § 769.12.  Mich. Ct. App. 309429 at Page ID.699.  Petitioner thereafter unsuccessfully moved to amend the judgment of sentence to allow his release on tether so that he could receive surgery on his back.  11/10/11 Tr. (Dkt. 8-12); 1/3/12 Tr. (Dkt. 8-13).

Petitioner then obtained new counsel, who filed a motion to amend the sentence, asserting that the judgment of sentence erroneously listed the misdemeanor offense as the offense of conviction.  1/23/12 Tr. (Dkt. 8-14).  The prosecutor indicated that the judgment correctly listed the felony aggravated domestic assault offense, Mich. Comp. L. §750.81a(3), as the offense of conviction.  Id. at PageID.445–446.  The court denied relief, finding that the written plea agreement and plea colloquy indicated that Petitioner pled guilty to felony aggravated domestic assault and not to a misdemeanor.  Id. at PageID.449–450.

Through counsel, Petitioner filed in the Michigan Court of Appeals an application for leave to appeal the order denying his motion to amend the judgment of sentence. The application raised a single claim:

> I. The judgment of sentence should be amended because LaPine's conviction under Mich. Comp. Laws § 750.81(2) where the listed prior offense was a conviction under Mich. Comp. Laws § 750.84 is a misdemeanor under Mich. Comp. Laws § 750.81(3).

The Michigan Court of Appeals denied the application for leave to appeal "for lack of merit in the grounds presented." Michigan v. LaPine, No. 309429 (Mich. Ct. App. June 5, 2012).

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court. The application raised two claims:

> I. The court of appeals erred in its decision to deny leave to appeal and the alteration of Count 8 or addition of Count 9 violate[s] LaPine's constitutional rights.
>
> II. This court should use its exclusive and inherent power to exercise a factual determination, or remand, or order an evidentiary hearing.

The Michigan Supreme Court denied the application by standard form order. Michigan v. LaPine, No. 148274 (Mich. 2015).

Meanwhile, on January 7, 2012, while Petitioner was still serving the jail term of his sentence, he became involved in a physical altercation with another inmate, George Lawrence. Petitioner was charged with violating the conditions of his probation as a result of the altercation, and the trial court held a probation revocation hearing on May 2, 2012.

At the hearing, Nathan Marra testified that he was Petitioner's probation agent. 5/2/12 Tr. at PageID.498 (Dkt. 8-18). Marra also testified that the probation order was issued on October 11, 2011, that it listed all of the terms of Petitioner's probation, and that it was signed by the trial judge and by Petitioner. Id. at PageID.499, 521. One of the conditions was that Petitioner not engage in any assaultive, abusive, threatening, or intimidating behavior. Id. at PageID.500. The court read

5

the terms and conditions of probation aloud to Petitioner at the time of sentencing. Id. at PageID.521.

Marra testified that in March 2012 he received a report that Petitioner engaged in assaultive behavior while Petitioner was an inmate at the jail. Id. at PageID.500. The report indicated that on January 7, 2012 officers at the jail responded to loud noise, and they found Petitioner and Lawrence in a state suggesting that an altercation had occurred. Id. at PageID.501. The officers reviewed security video footage, and it showed that Petitioner put Lawrence in a chokehold and moved Lawrence around while Lawrence struggled to get out of the chokehold. Id. Three other inmates who witnessed the incident were present. Id. at PageID.502.

One witness, Raymond Donnal, originally stated that Petitioner and Lawrence were only horsing around, but later, when he was outside the presence of Petitioner, he made another statement. Id. at PageID.502–503. In his second statement, Donnal reported that Petitioner asked him to lie and report that Petitioner and Lawrence were simply engaged in horseplay. Id. at PageID.503. He also stated that, during the incident, Petitioner had Lawrence in a chokehold. Id. Another witness, Steven Spencer, stated that Petitioner and Lawrence were originally playing around when something seemed to set off Petitioner. Id. at PageID.504. According to Spencer, Petitioner forced himself past a door that Lawrence was holding closed, and he grabbed Lawrence in a headlock. Id. Lawrence's face turned red, and his feet were off the ground. Id. Donnal and an officer yelled at Petitioner to stop, and Petitioner let go of Lawrence and acted as if the situation had been a joke. Id. Darryl Evans, another prisoner, maintained that Petitioner and Lawrence were only playing around. Id.

Marra read the statements and watched the video. Id. at PageID.504–505. On March 6, 2012, he filed the paperwork for a probation violation. Id. Marra believed that Petitioner used

deadly force against Lawrence.  Id. at PageID.505.  After he filed the violation, Marra received at least ten other reports of threatening or assaultive behavior by Petitioner at the jail.  Id. at PageID.506.  According to the reports, Petitioner threatened to "blow the jail up" with ammonium nitrate and diesel.  Id. at PageID.506.  He threatened to shoot people at Walmart and blow up the Judge's bench.  Id. at PageID.507.  Marra also received reports that Petitioner assaulted inmate Frank Killips while at the jail, but that incident occurred a week before Petitioner's sentencing.  Id. at PageID.522–523.

Lawrence testified that he was a prisoner at the jail on the date of the incident.  Id. at PageID.526–527.  He described the incident as follows.  He was joking around with Petitioner when Petitioner yanked a door open.  Id. at PageID.527.  Lawrence turned his back on Petitioner to walk back to his cell, and Petitioner grabbed him from behind and put him in a chokehold.  Id. Petitioner lifted Lawrence off the ground.  Id.  Lawrence could not breathe, and he heard Donnal screaming for Petitioner to stop.  Id. at PageID.527, 533.  Lawrence felt like he was close to passing out.  Id. at PageID.531.  The assault was not part of their joking around, and Lawrence was surprised when Petitioner grabbed him.  Id.  Petitioner released Lawrence when a guard approached and told Petitioner to "break it up."  Id.

Lawrence also testified that Petitioner tried to convince inmate Donnal to lie about what happened  Id. at PageID.533.  According to Lawrence, Petitioner later made a "cut-throat gesture" at Lawrence, which Lawrence interpreted as a threat.  Id. at PageID.535.  The prosecutor played the video of the incident for Lawrence, and Lawrence described for the court what the video showed.  Id. at PageID.536–538.  Lawrence testified that he was not offered anything in exchange for his testimony, but he acknowledged his understanding that the prosecutor would not object to his early release.  Id. at PageID.551–552.

Raymond Donnal testified to his account of the incident. Id. at PageID.560. According to Donnal, he thought that Petitioner was choking Lawrence to death, and he screamed for Petitioner to let go. Id. at PageID.560–561. Donnal said that what he saw was not horseplay but rather an assault. Id. at PageID.562. He also said that after the incident, Petitioner sent notes around telling other inmates to claim that the incident had been only horseplay. Id. Donnal admitted that he was "a little" intimidated by Petitioner. Id. Petitioner drafted an affidavit for Donnal to sign, and Donnal signed it because he was afraid. Id. at PageID.573–574.

Daryl Evans, another inmate at the jail, testified for the defense that, from his vantage point, it appeared that Petitioner and Lawrence were engaged in horseplay. Id. at PageID.578–581.

Detective Greg Postma testified for the defense that Petitioner had previously been placed in a cell with Donnal and was equipped with a wire. Id. at PageID.594–595. Petitioner said he could provide information to the police about the crimes of Donnal and Lawrence. Id. at PageID.595–597. Postma testified that Petitioner was the one who initiated the idea that he could get certain inmates to talk about their criminal activity. Id. at PageID.599.

In its factual findings, the court relied on the video and found that "obviously an assault took place." Id. at PageID.618. The court found that the incident was not "horsing around" and was not consensual. Id. It also determined that "LaPine did in fact commit an assault and battery upon Mr. Lawrence" and thereby violated his probation. Id. at PageID.620. The court did not consider the other allegations of misconduct in making its finding, stating "all of the other stuff is not relevant, why he was given 68 misconducts, why he made threats to anybody else has no bearing." Id. It subsequently resentenced Petitioner to 3-15 years in prison on his underlying conviction. 5/29/12 Tr. at PageID.631–632 (Dkt. 8-19).

Petitioner filed in the Michigan Court of Appeals a pro se delayed application for leave to appeal his probation violation conviction. The application raised eighteen claims:

I. The judgment of sentence should be vacated because all state courts lacked subject matter jurisdiction over LaPine. LaPine was an Indian in Indian country.

II. LaPine should be remanded for an evidentiary hearing to make a factual determination of ineffective assistance of counsel claims, judicial misconduct, and bias.

III. LaPine should have been informed of what questionable behavior was required of him, and a probation order should have been issued to him. It should have been signed and gone over with him.

IV. The probation violation hearing was injected with extra [sic] notice and impermissibly tainted the hearing and so a new hearing must be held.

V. The trial court failed to ensure that LaPine received written notice of the violation charging information at the arraignment and  to read the charges to him to assure he understood them.

VI. The trial court exceeded its authority after probation was revoked to impose court costs, fines, and supervision fees.

VII. When probation is revoked and a defendant is sentenced to prison, [the defendant is entitled as a matter of law to] any accumulated Sheriff's good time [that the defendant] earned or double jeopardy is violated.

VIII. When errors in the PSIR [presentence investigation report] are raised at sentencing and the PSIR contains errors, a defendant is entitled to have that information stricken and corrected.

IX. When misconduct is alleged against a prisoner[,] a due process right exists that mandates written notice of the allegations at least 24 hours in advance of an administrative hearing, and written notice of the decision.

X. Judicial misconduct and bias.

XI. Obstruction of justice and fraud on the court.

XII. Evidence tampering.

XIII. Denial of exculpatory evidence by prosecution and law enforcement/the Sheriff's department personnel.

XIV. Misconduct in office by judge and prosecutor.

XV. Denial of access to the courts.

XVI. Perjured testimony.

XVII. Ineffective assistance of counsel [at the probation violation hearing].

XVIII. There was insufficient evidence to find that LaPine violated his probation and [the trial court erred in sentencing] LaPine to prison.

The Michigan Court of Appeals denied the application for leave to appeal "for lack of merit in the grounds presented." Michigan v. LaPine, No. 313548 (Mich. Ct. App. Oct. 23, 2013). Petitioner appealed to the Michigan Supreme Court, which ordered a response from the prosecutor regarding the tribal lands jurisdictional issue and then denied the application by standard form order. Mich. Supreme Ct. 148274 at PageID.952 (Dkt. 8-25).

Petitioner returned to the trial court and filed a motion for relief from judgment, raising ten claims:

I. The court lacked any subject matter jurisdiction over LaPine because he is a registered Native American as is the alleged victim with a federally recognized tribe, and all the allegations arose from within Indian Country.

II. LaPine received ineffective assistance of appellate counsel for not raising the lack of subject matter jurisdiction, the illusory plea, due process issues, injection of extra [sic] notice, failure to assure the probation notice was provided, failure to assure the probation violation notice was provided and understood, and failure to inform and assure LaPine knew when probation started.

III. The plea was illusory because the state lacked subject matter jurisdiction, the state did not meet the elements of aggravated assault nor were they proven beyond a reasonable doubt, nor were the requirements of 750.81b adhered to, and the plea was based on misdemeanor charges only and then altered by the prosecution[,] [but] misdemeanor charges while on parole allow jail credit.

IV. LaPine's due process rights were violated [because] the elements of aggravated assault are not on the record nor proven beyond a reasonable doubt, the mandates of 750.81b were not established at sentencing, the plea was altered, the charging information and judgment of sentence were changed after appeal, the wrong statute

was used, the state lacked subject matter jurisdiction, and misdemeanor charges allow for jail credit.

V. The state lacked subject matter jurisdiction to charge aggravated assault and failed to prove its elements beyond a reasonable doubt. Sufficient evidence was not provided to convict.

VI. Misdemeanor counts while on parole allow for jail credit.

VII. The state court lacked subject matter jurisdiction where LaPine was charged and erroneously found in violation of probation, where [ ] administrative rules require that a supervising probation agent shall provide notice of the conditions of probation and cannot violate someone's probation without notice first being provided.

VIII. Judge Lambros [the trial judge] should have dismissed the probation violation when he heard on 5/2/12 at the revocation hearing that probation agent Marra never provided LaPine with a probation order or went over the terms and conditions of probation.

IX. The judgment of sentence is erroneous and invalid, contains errors of the probation conviction method and the jail credit.

X. LaPine motions this court for immediate appellate counsel to go over this motion for relief from judgment or supplement it and requests oral argument, an evidentiary hearing, and a Ginther hearing.

The trial court denied the motion for relief from judgment, finding that review of the claims was barred under MCR 6.508(D)(3) because Petitioner did not establish "good cause" and "actual prejudice" for his failure to raise the claims on direct review.  Michigan v. LaPine, No. 10-10378-FC (Chippewa Cnty. Cir. Ct. March 11, 2014).

Petitioner filed in the Michigan Court of Appeals an application for leave to appeal, raising five claims. The Michigan Court of Appeals denied the application for leave to appeal for failure to establish entitlement to relief under MCR 6.508(D).  Michigan v. LaPine, No. 323524 (Mich. Ct. App. Dec. 22, 2014).  Petitioner appealed to the Michigan Supreme Court, but it too denied relief.  Michigan v. LaPine, No. 150772 (Mich. Sept. 29, 2015) (Dkt. 8-27).

11

Petitioner thereafter brought this action by filing his habeas petition, raising 31 claims for relief. Pet. (Dkt. 1). Petitioner then filed for a stay of proceedings so that he could return to the state court and present additional claims. Mot. to Stay (Dkt. 6). The Court granted the motion. 10/22/15 Order (Dkt. 9).

The state court appointed counsel to Petitioner, and counsel filed a motion for relief from judgment that raised four claims:

I. Newly discovered evidence. Raymond Donnal came forward stating he was forced to perjure himself by the prosecution or face life in prison, and George Lawrence perjured himself for an early release[.]

II. Prosecutorial misconduct. Brian Peppler and Elizabeth Chambers forced/coerced Donnal to perjure himself, rehearsed testimony, [and] made a deal with [Donnal] and Lawrence, [in] which Nathan Marra was also involved.

III. Denial of exculpatory evidence. The information listed above in I and II was exculpatory and withheld.

IV. Violation of due process. The information listed above in I and II violated due process.

The trial court denied the motion for relief from judgment on the merits, finding that the alleged errors would not have made a difference in the outcome of the probation revocation hearing because the jail video established that Petitioner assaulted Lawrence and thereby violated his probation. 1/17/17 Mot. Tr. at PageID.1587–1589 (Dkt. 17-17).

Petitioner's appointed counsel then filed in the Michigan Court of Appeals an application for leave to appeal, raising the following claims:

I. The trial court abused its discretion in denying defendant's motion for relief from judgment or for an evidentiary hearing where the defendant presented newly discovered evidence of his innocence in newly discovered affidavits and offers of proof.

II. The defendant was denied his state and United States constitutional rights to due process and to a fair trial, where the prosecution failed to disclose exculpatory

evidence of a 5-week reduction of the complaining witness's jail sentence in exchange for his testimony against the defendant at the probation violation hearing.

Petitioner also filed a pro se brief in support of his application for leave to appeal, raising the following additional claims:

I. Was there a conflict of interest when Judge James Lambros presided over a case where his father Nicholas Lambros was the judge who previously presided over this case, and where [J]udge James Lambros had personal information about this case from defendant-appellant and Ashley Payment?

II. Did the court fail to fulfill a promise or otherwise violate defendant's rights to due process and access to the court when James Lambros conducted proceedings in court without defendant-appellant being present after defendant-appellant was told that he could attend each proceeding by the court and writs were issued and defendant-appellant was not produced for court, by the court after defendant-appellant requested to be present and filed civil actions to enforce his presence in court?

III. Did the court make an abuse of discretion outside the range of plausible credible outcomes, where the successor judge James Lambros stated he would not make a ruling until he ascertained the video and based his ruling to deny the motion for relief of judgment that the video provided an assault on George Lawrence, which is non-factual. Where the record reflects that his father Judge Nicholas Lambros based his decision solely on George Lawrence's testimony?

Citing MCR 6.502(G), the Michigan Court of Appeals dismissed the application for leave to appeal because Petitioner "failed to demonstrate his entitlement to an application of any of the exceptions to the general rule that a movant may not appeal the denial of a successive motion for relief from judgment." Michigan v. LaPine, No. 339285 (Mich. Ct. App. Feb. 7, 2018) (Dkt. 17-20). Petitioner applied for leave to appeal this decision to the Michigan Supreme Court, which denied relief under MCR 6.508(D). Michigan v. LaPine, No. 157367 (Mich. Sept. 12, 2018) (Dkt. 17-21).

Having exhausted his state court remedies, Petitioner returned to this Court and filed a supplement to his petition. Supp. (Dkt. 14). The Court thereafter reopened the case. 3/6/19 Order (Dkt. 15).

The pro se petition and supplemental brief together enumerate 36 claims, many of which contain multiple subparts.  Because nearly all of the claims contain overlapping allegations, the Court interprets the petition and supplemental brief to raise what amount to 12 bases for relief:

1. Subject Matter Jurisdiction of the State Court (Claims 1, 2, 3, 4, and 9)

2. Validity of No Contest Plea (Claims 2, 3, 4, 5, 9, 11, 12, 30, and 31)

3. Notice of Terms of Probation (Claims 2, 6, 7, and 14)

4. Notice of Probation Violation Charges (Claims 2, 6, 16, 20, and 29)

5. Petitioner's Presence in Court (Claims 2, 21, 22, 26, 29, and Supp. 3)

6. Presentation of Evidence of Additional Violations Not Included in Probation Violation Charge (Claims 2 and 15)

7. Sufficiency of Evidence at Probation Violation Hearing (Claims 2, 28, and Supp. 5)

8. Failure to Call Defense Witnesses at Revocation Hearing (Claims 2, 10, and 13)

9. Suppression of Exculpatory Evidence and Presentation of Perjured Testimony at Revocation Hearing (Claims 9, 22, 23, 24, 25, 27, Supp. 1, and Supp. 2)

10. Denial of Jail Credit and Good Time Following Probation Violation and Assessment of Fees and Costs (Claims 8, 17, and 18)

11. Inaccuracies in Presentence Investigation Report (Claim 19)

12. Judicial Bias (Claims 21, 25, and Supp. 4)

## II. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d) imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases." Shoop v. Hill, 139 S. Ct. 504, 506 (2019). A federal court may grant habeas corpus relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

14

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 405–406 (2000).  An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  Id. at 409.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (punctuation modified).  "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  Id. at 103 (punctuation modified).  As a condition for obtaining habeas relief from a federal court, the state prisoner must show that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id.

### III. DISCUSSION

The Court first addresses Respondent's argument that most of the claims attacking Petitioner's no contest plea are procedurally defaulted.  It then discusses Petitioner's claims for relief.

### A.  Procedural Default

Respondent contends that most of the claims attacking Petitioner's no contest plea are procedurally defaulted by his failure to raise them on direct review.  See Sheffield v. Burt, 731 F.

App'x 438, 441 (6th Cir. 2018) ("[W]here a straightforward analysis of settled state procedural default law is possible, federal courts cannot justify bypassing the procedural default issue.").

Petitioner raised only one of his challenges to the validity of his plea on direct review: his claim regarding the use of the misdemeanor statutory citation in the amended criminal information and judgment of sentence. All of the other claims challenging the validity of the plea were presented to the state courts in Petitioner's first motion for relief from judgment and the appeal that followed it.

In deciding Petitioner's post-conviction motion for relief from judgment, the trial court found that he did not establish "good cause" for failing to raise the new claims challenging his plea on direct review, and, therefore, review was barred under MCR 6.508(D)(3). See Mich. Ct. App. 323524 at PageID.1221–1225 (Dkt. 8-26). The subsequent form orders issued by the Michigan appellate courts do not state the grounds for decision, so the Court must look to the trial court's order to determine whether the claims are defaulted. See Guilmette v. Howes, 624 F.3d 286, 291 (6th Cir. 2010).

The language of the trial court's order made it apparent that the trial court denied relief under MCR 6.508(D)(3), which precludes review of issues raised in a post-conviction motion if the issues could have been raised on direct appeal, unless the defendant shows cause and prejudice or actual innocence. Enforcement of MCR 6.508(D)(3) constitutes an independent and adequate state ground sufficient to bar habeas review of the defaulted claims. Amos v. Renico, 683 F.3d 720, 733 (6th Cir. 2012).

The trial court's reliance on MCR 6.508(D)(3), therefore, bars review of the post-conviction claims challenging the validity of his plea unless Petitioner can demonstrate either cause for the default and prejudice from the alleged constitutional violation or demonstrate that

16

failure to consider the claims would result in a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). The only candidate for cause that Petitioner offers is that his appellate counsel was ineffective for failing to raise these additional challenges to his plea on direct appeal. While ineffective assistance of appellate counsel can establish cause for a procedural default, see Ivory v. Jackson, 509 F.3d 284, 294 (6th Cir. 2007), appellate counsel need not "raise every nonfrivolous claim on direct appeal." Monzo v. Edwards, 281 F.3d 568, 579 (6th Cir. 2002).

Here, Petitioner runs into a fundamental problem. Prior to his plea, Petitioner faced 15-year felony aggravated domestic assault charges and a potential sentence of life or any term of years for the torture charge. See Mich. Comp. L. § 750.85(1). Yet, at the time of his direct appeal, Petitioner faced only a one-year jail term to be followed by three additional years of probation as a result of his plea deal. Consequently, it is not surprising that, on direct appeal, his appellate counsel did not seek to invalidate the plea and instead sought only an amendment to the judgment of sentence to reflect a conviction for a misdemeanor, thereby limiting Petitioner's exposure to the one-year jail sentence without the added period of probation. See 1/23/12 Tr. at PageID.448.

That is, before Petitioner violated his probation, he had little incentive to attempt to undo his plea and face trial on the original charges. Appellate counsel did not perform deficiently by avoiding such claims and by instead raising a claim that sought only to amend the sentence to eliminate the added period of probation. Accordingly, Petitioner has failed to demonstrate that his appellate counsel performed deficiently by failing to raise additional claims challenging the validity of the plea, and review of those claims is barred.

Nevertheless, and for the reasons stated below, the Court finds that the defaulted claims are also without merit.

**B.  Petitioner's Claims for Relief**

The Court addresses each of Petitioner's 12 bases for relief in turn.

**1.  Subject Matter Jurisdiction of the State Court (Claims 1, 2, 3, 4, and 9)**

Petitioner asserts that the trial court did not have jurisdiction over his criminal case because he is a Native American, and the offenses occurred on tribal lands.  He also asserts that his attorneys should have raised this claim in the state courts.

On direct appeal from the probation violation, the Michigan Supreme Court ordered the prosecution to respond to this allegation.  10/1/14 Order, Michigan v. LaPine, No. 148274, in Mich. Supreme Ct. 148274 at PageID.969.  In response, the prosecution submitted an affidavit from Levi D. Carrick, Sr., the Tribal President of the Bay Mills Indian Community.  Carrick Aff., in Mich. Supreme Ct. 148274 at PageID.978.  The affidavit states that Petitioner was banished from the Bay Mills Tribe and its lands, and that the location of the offenses, 13673 W. Lakeview, Brimley, Michigan, is not located within tribal boundaries.  Id.  Petitioner disputes the contention that he was banished from the tribe, and he cites to a portion of the preliminary examination transcript to show that the offenses occurred on tribal lands.  Mich. Supreme Ct. 148274 at PageID.989–994.

A closer examination of the record, however, undermines the factual basis for Petitioner's claim.  During the preliminary examination, the victim testified to multiple assaults.  With respect to the last incident, which occurred on May 4, 2010, the victim testified that Petitioner drove her to a wooded area near a cemetery that is "reservation property."  7/27/10 Tr. at PageID.221–222 (Dkt. 8-4).  Petitioner brought the victim into the woods, took a "needle bar," which is a long, pointed metal bar used to chip ice, out of his truck, and slammed it into the ground.  Id. at PageID.222–223.  The prosecutor moved to add an additional charge of assault with a dangerous

18

weapon with respect to this incident.  Id. at PageID.311.  The court denied the motion, however, finding that the evidence did not support such a charge.  Id. at PageID.314.  Accordingly, the evidence Petitioner relies on to support his claim that the crimes occurred on tribal lands relate to an incident that did not form part of the offenses that were bound over to the trial court.

The alleged assaults that were bound over to the trial court occurred at Petitioner's residence at 13673 W. Lakeview, see Mich. Supreme Ct. 148274 at PageID.232–235, 238–240, except for one incident that occurred on Six Mile Road "just right on the main road, just a couple miles you turn onto it from Mackinac Trail."  Id. at PageID.245–246.  Petitioner proffered no evidence to the state courts, and he proffers none here, that his residence or the location on Six Mile Road is in tribal territory.

There is no basis on which to conclude, therefore, that the state court attempted to exercise jurisdiction over an incident that occurred on tribal lands. Petitioner has failed to demonstrate that the state court lacked subject matter jurisdiction, and Petitioner's attorneys were not ineffective for failing to raise an issue that lacked merit.  See Mahdi v. Bagley, 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim.").

2.  **Validity of No Contest Plea (Claims 2, 3, 4, 5, 9, 11, 12, 30, and 31)**

Petitioner challenges the validity of his no contest plea on multiple grounds.  When a criminal defendant is convicted pursuant to a guilty or no contest plea, review of the defendant's conviction is limited to whether the defendant made the plea knowingly, intelligently, and voluntarily.  United States v. Broce, 488 U.S. 563, 569 (1989); Boykin v. Alabama, 395 U.S. 238 (1969).  A guilty plea is voluntary if it is not induced by threats, bribes, or misrepresentations, and the defendant is made aware of the likely consequences of the plea.  Brady v. United States, 397 U.S. 742, 755 (1970).  The plea is intelligent and knowing where there is nothing to indicate that

the defendant is incompetent or otherwise not in control of his or her mental faculties, is aware of the nature of the charges, and is advised by competent counsel. Id. at 756. When a habeas petitioner challenges his or her guilty plea, the state generally satisfies its burden by producing a transcript of the state court proceedings that shows that the plea was made voluntarily. See Garcia v. Johnson, 991 F.2d 324, 326 (6th Cir. 1993). On habeas review, a state court's finding that a plea was valid is a factual finding that is entitled to a presumption of correctness. Railey v. Webb, 540 F.3d 393, 417 (6th Cir. 2008).

The plea transcript here demonstrates that Petitioner voluntarily entered his no contest plea. Petitioner first asserts that his plea was involuntary because he thought he was pleading to a misdemeanor domestic violence offense. His only support for this claim is the fact that the amended criminal information filed after the plea and the judgment of sentence list the added Count VIII as domestic violence under Michigan Comp. L. § 750.812, which is a misdemeanor.

Despite the citation to the misdemeanor in these documents, which were generated after the plea hearing, the record shows that Petitioner was adequately and clearly informed during the plea hearing that he was pleading no contest to a felony aggravated domestic assault charge. Both the written plea agreement and the plea colloquy informed Petitioner that the aggravated domestic assault charge to which he was pleading, a charge referred to on the record as "aggravated domestic violence," see 9/6/11 Tr. at PageID369–371, 377, was an offense that carried a two-year sentence. At the time of Petitioner's prosecution, Mich. Comp. L. § 750.81a(3) made a second conviction for an aggravated assault on a spouse a two-year felony. Petitioner was also informed that he was pleading no contest to being a fourth-time habitual felony offender, which indicated that he was pleading to a felony offense. Id. Finally, at the close of the plea hearing, defense counsel again clarified that "my client is pleading to aggravated domestic violence, second offense, with a fourth

habitual." <u>Id.</u> at PageID.385.   The plea record belies Petitioner's claim that he thought he was pleading no contest to a misdemeanor.

Moreover, the claim ignores the fact that both the amended criminal information and the judgment of sentence upon which Petitioner relies correctly cite § 750.81a(3) as the offense of conviction—despite the citation to the misdemeanor.  <u>See</u> Mich. Ct. App. 309429 at PageID.697, 699.  Petitioner has failed to demonstrate that his plea was involuntary based on his claim he did not know that he was pleading guilty to a felony aggravated domestic assault offense.

Petitioner also asserts that his plea was illusory or that he was overcharged because there was no basis for a felony aggravated assault charge.  Following the preliminary examination, the state court identified the acts that the victim testified to and that warranted the felony charges.  It found that the victim's testimony that on one occasion, Petitioner bit her 23 times on the back and arms sufficiently stated a claim for assault with intent to commit great bodily harm.  7/27/10 Tr. at PageID.313.  Likewise, the court found that one incident in which Petitioner kicked the victim in the back of her head and then punched her three times in the head and another incident in which he punched her in the head warranted the felony assault charges.  <u>Id.</u>  This Court will not second-guess the state court's determination that the acts the victim described warranted the charges.  <u>See</u> <u>Redmond v. Worthinton</u>, 878 F. Supp. 2d 822, 844 (E.D. Mich. 2012) ("The bind-over decision itself invokes a question of state law, which is not cognizable on habeas corpus review.").

To the extent Petitioner asserts that an insufficient factual basis for his conviction was presented at the plea hearing, the claim is non-cognizable.  <u>See</u> <u>Watkins v. Lafler</u>, 517 F. App'x. 488, 500 (6th Cir. 2013).  The federal constitution does not require a factual basis to be established at a plea hearing.  <u>Id.</u>  While MCR 6.302(D)(1) requires that a factual basis be elicited from a defendant prior to accepting a guilty plea, the failure of a Michigan trial court to comply with the

rule does not establish a basis for habeas relief.  Id.  "[T]he requirement that a sentencing court must satisfy itself that a sufficient factual basis supports the guilty plea is not a requirement of the Constitution, but rather a requirement created by rules and statutes."  United States v. Tunning, 69 F.3d 107, 111 (6th Cir. 1995).

Petitioner next asserts that he was never placed under oath at the plea hearing and that medications he was taking rendered the plea involuntary.  The record shows that Petitioner was placed under oath at the plea hearing.  9/6/11 Tr. at PageID.376.  And his assertion that medications clouded his judgment is belied by his testimony that he was entering his plea freely and voluntarily. Id. at PageID.381.  Petitioner's appropriate and responsive statements during the plea colloquy also refute any claim that alleged impairment from medication rendered his plea involuntary.

In addition, Petitioner asserts that his plea is invalid because he was not informed of the fees and costs that would be imposed as part of the judgment of sentence.  The record shows that the trial court charged a total of $661 in fees and costs to Petitioner.  Mich. Ct. App. 309429 at PageID.699.  Petitioner points to no clearly established Supreme Court precedent holding that, for a plea to be voluntary, a defendant must be informed of court fees and costs associated with a conviction.  Further, "any self-serving assertion that Petitioner would not have accepted the plea but for this alleged misadvice [regarding fees and costs] simply strains credulity."  Martinez v. Jones, No. 16-CIV-14375, 2017 WL 11474012, at *10 (S.D. Fla. Oct. 30, 2017).  Petitioner fails to demonstrate that, if he had been informed that fees and costs would be imposed as a result of his plea, he would have rejected a plea agreement that reduced his sentencing exposure from 15 or more years to one year and that he would have risked trial on the original charges.

Finally, Petitioner challenges the validity of his plea on the grounds that he was denied effective assistance of counsel. To succeed on such a claim, he must show both deficient

performance and prejudice.  Premo v. Moore, 562 U.S. 115, 120–122 (2011).  To establish deficient performance, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  Hill v. Lockhart, 474 U.S. 52, 57–58 (1985) (punctuation modified).  To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, [defendant] would not have pleaded guilty and would have insisted on going to trial."  Id. at 59.  Petitioner has failed to demonstrate that his attorneys were ineffective for, before the entry of Petitioner's plea, failing to raise the frivolous jurisdictional claim, claims of an illusory plea deal, or other arguments related to contesting the original charges brought against him.

Furthermore, Petitioner fails to show that he was prejudiced by his counsel's alleged misconduct.  A fair reading of the victim's testimony at the preliminary examination shows that the evidence against Petitioner was substantial.  Faced with this evidence, Petitioner was offered a plea deal that required him to serve a single year in jail.  If convicted after trial on the original charges, Petitioner faced a 15-year prison term on the felony assault charges.  If convicted of the torture charge as a fourth-time habitual offender, he faced possibly a longer term.  Petitioner has not shown a reasonable probability that, but for his counsel's advice, he would have rejected the plea agreement and elected to take his chances at trial.  See West v. Berghuis, 716 F. App'x 493, 497 (6th Cir. 2017).[1]

---

[1] Petitioner's second claim, as far as the Court can discern, seems to state that his various attorneys were ineffective for failing to raise all of his substantive claims at various points in state court proceedings, including the errors he alleged occurred after the plea hearing. For the reasons that follow, the Court rejects all of Petitioner's underlying claims. Therefore, his attorneys were not ineffective for their failure to press meritless claims at any point during state court proceedings. See Mahdi, 522 F.3d at 638.

Therefore, all of Petitioner's claims challenging the validity of his no contest plea are procedurally barred from review or otherwise without merit.

### 3. Notice of Terms of Probation (Claims 2, 6, 7, and 14)

Petitioner asserts that he was never adequately informed of the terms of his probation, and, therefore, he did not have notice that he could be charged with a probation violation for the incident that occurred at the jail.

Under established Supreme Court precedent, a statute violates due process if it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." Connally v. Gen. Constr. Co., 269 U.S. 385, 391 (1926). The same constitutional principles apply to conditions of supervised release. See United States v. Paul, 274 F.3d 155, 166 (5th Cir. 2001) ("Restrictions on an offender's ability to interact with particular groups of people . . . must provide 'fair notice' of the prohibited conduct."); United States v. Schave, 186 F.3d 839, 843 (7th Cir. 1999) ("A condition of supervised release is unconstitutionally vague if it would not afford a person of reasonable intelligence with sufficient notice as to the conduct prohibited.").

In passing sentence, the trial court explicitly informed Petitioner of the conditions of his probation. Among other things, the trial court informed Petitioner that a condition of his probation was that he "not engage in any assaultive, abusive, threatening, or intimidating behavior." 10/11/11 Tr. at PageID.401. This language put Petitioner on notice that assaulting another prisoner by putting the prisoner in a chokehold would violate the terms of his probation.

Moreover, Petitioner's probation agent, Nathan Marra, testified that the probation order was issued on October 11, 2011, the date of sentencing, and that it listed all of the terms of Petitioner's probation, including the one at issue. 5/2/12 Tr. at PageID.499, 521. The trial judge

24

and Petitioner signed the order. Id. Marra stated that he saw Petitioner sign the order. Id. at PageID.499, 520. And Petitioner was in court and presumably paying attention when the trial court read the conditions of his probation to him. Accordingly, Petitioner's claim that he did not receive constitutionally adequate notice that a term of his probation prohibited him from engaging in the sort of assaultive behavior at the jail that resulted in the violation is without merit.

### 4. Notice of Probation Violation Charges (Claims 2, 6, 16, 20, and 29)

Petitioner asserts that the trial court failed to provide him with written notice of the probation violation charge at the arraignment, failed to give him sufficient advance notice of the probation violation hearing, failed to set a reasonable bond, and failed to read the charges to him to ensure that he understood them so he could prepare a defense.

Hearings to revoke probation, like hearings to revoke parole, are not criminal prosecutions. See Morrissey v. Brewer, 408 U.S. 471, 480 (1972); United States v. Santana, 526 F.3d 1257, 1259 (9th Cir. 2008); United States v. Tippens, 39 F.3d 88, 89 (5th Cir. 1994). A revocation hearing, therefore, does not trigger "the full panoply of due process rights accorded a defendant at a criminal trial." Carchman v. Nash, 473 U.S. 716, 726 (1985). Because revocation proceedings do affect the liberty interests of individuals, however, they entitle a defendant to limited protections under the Due Process Clause. See Morrissey, 408 U.S. at 484; Gagnon v. Scarpelli, 411 U.S. 778, 788 (1973). As relevant here, MCR 6.445(B) required the trial court to ensure Petitioner received advance written notice of the alleged violation, to advise him of his right to contest the charge at a hearing, to advise him of his right to counsel, to set bond if appropriate, and to set a reasonable prompt hearing date.

The record shows that the trial court complied with these requirements. The incident at the jail occurred on January 7, 2012. Marra filed the probation violation charge on March 6, 2012.

5/2/12 Tr. at PageID.504–505.  The trial court docket sheet confirms that a notice of violation and a bench warrant were issued on March 6, 2012 and that bond was set at $1,500.  Pet. at PageID.167. Marra personally served Petitioner with the written charge.  5/2/12 Tr. at PageID.505–506.

On March 8, 2012, Petitioner appeared in state court with counsel on a continuation of his motion to amend the terms of his probation to allow him to remain in Chippewa County after what was scheduled to be his release from jail.  3/8/12 Tr. at PageID.455–456 (Dkt. 8-15).  The court granted the motion and agreed to waive the residency condition.  Id. at PageID.464.  The court then turned to the new probation violation accusation.  Id.  Defense counsel indicated that he did not represent Petitioner for that matter.  Id. at PageID.464–465.  The court indicated that it would arraign Petitioner on the charge, and it informed Petitioner that he was charged with violating the terms of his probation by engaging in assaultive behavior on January 7, 2012 toward George Lawrence in the Chippewa County Jail.  Id.  The court also indicated that it would appoint another attorney to represent Petitioner for the violation hearing.  Id. at PageID.465–466.  Though he expressed some confusion, stating that nothing happened at the jail, Petitioner agreed to waive his right to have a hearing within 14 days of arraignment to allow his attorney time to prepare.  Id.

The trial court appointed counsel on March 9, 2012. Cnty. of Chippewa Dkt. Sheet 10-000378-FC at PageID.167 (Dkt. 8-1).  At a hearing held on March 27, 2012, counsel moved to adjourn the probation violation hearing, citing his need to further investigate the case and to review the video from the jail.  3/27/12 Tr. at PageID.471–472 (Dkt. 8-16).  Counsel stated that Petitioner was scheduled to be released from his jail term that week and that Petitioner should be allowed to do so in advance of the violation hearing.  Id. at PageID.472.  The prosecutor asserted that Petitioner was engaging in a delay tactic, that the state would seek a prison sentence if Petitioner were found to have violated his probation, and that Petitioner's bond should be increased because

Petitioner was dangerous and a flight risk.  Id. at PageID.472–473.  The trial court initially ruled that Petitioner would be released pursuant to the original sentence agreement but that he would be placed on an electronic tether.  Id. at PageID.476–478.  Petitioner posted the $1,500 bond on March 28, 2012.  5/2/12 Tr. at PageID.483–484.  But the next day, the prosecutor moved to increase the bond, informing the court that due to technical reasons, a GPS tether was unavailable.  Id.  The court set a new cash bond of $250,000.  Id. at PageID.488–490.

The record thus shows that Petitioner's probation agent adequately and promptly provided Petitioner written notice of the probation violation and that the trial court notified him of the charges at his arraignment.  The trial court's explanation of the charges was clear and unambiguous and satisfied the minimal requirements of due process.  At Petitioner's request, counsel was appointed for him the day after his arraignment. Though he was not released on his original bond, Petitioner had no absolute constitutional right to release before the hearing on his probation revocation.  Bloss v. People of the State of Mich., 421 F.2d 903, 905 (6th Cir. 1970).  Additionally, the court granted counsel's motion to adjourn the hearing to provide counsel an adequate opportunity to prepare a defense, a fact that undermines Petitioner's claim that he had insufficient advance notice of the hearing.

To the extent Petitioner claims that the trial court failed to comply with any of the technical requirements of the state court rule governing notice of the probation violation, his claims are not cognizable on federal habeas review. A federal court is limited to deciding whether the prisoner is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2241(c)(3), 2254(a); Estelle v. McGuire, 502 U.S. 62, 68 (1991).

Petitioner has, therefore, failed to demonstrate entitlement to habeas relief with respect to these claims.

27

5. **Petitioner's Presence in Court (Claims 2, 21, 22, 26, 29, and Supp. 3)**

Petitioner asserts that he was not personally present in the courtroom during the pretrial hearing held on March 27, 2012 prior to the revocation hearing.  The state court record, however, indicates that the proceeding started with the court stating, "The next case is the People versus Mr. LaPine. Mr.  LaPine is present with his attorney of record, Mr. Bias."  3/27/12 Tr. at PageID.471. After a brief recess during the pretrial hearing, the court again stated, "Thank you. You may be seated. Mr. LaPine is present, Mr. Bias, on behalf of Mr. LaPine, and Elizabeth Chambers is here on behalf of the People."  Id. at PageID.476.

Petitioner asserts that the trial court's statement that he was present was false.  The Court, however, "must presume that the trial transcript accurately reflects the proceedings in the trial court."  Thomas v. McKee, No. 2:11-CV-10653, 2016 WL 213021, at *23 (E.D. Mich., Jan. 19, 2016) (punctuation modified); see also Norris v. Schotten, 146 F.3d 314, 333 (6th Cir. 1998) (finding in a habeas proceeding that speculation is insufficient when challenging the accuracy of trial transcripts); Harris v. McBride, No. 3:13–CV–161, 2014 WL 2738574, at *4 (N.D. W. Va., June 17, 2014) (recognizing in the context of a habeas action that "[t]he fact that the petitioner disagrees with what is contained in a transcript is insufficient to overcome the presumption of the transcript's accuracy").  The presumptively accurate record undermines Petitioner's claim that he was not present in court for the pretrial hearing.  The claim is without merit.

6. **Presentation of Evidence of Additional Violations Not Included in Probation Violation Charge (Claims 2 and 15)**

Petitioner asserts that the prosecution improperly presented evidence of additional violations that were not included in the probation violation charge.  This evidence includes other instances of assaultive conduct and threats Petitioner made.  Petitioner's probation agent testified at the revocation hearing that after he filed the charges, he received at least ten other reports of

additional threatening or assaultive behavior by Petitioner while Petitioner was in jail. 5/2/12 Tr. at PageID.506.  According to the reports, Petitioner threatened to blow up the jail, shoot people at Walmart, and blow up the Judge's bench.  Id. at PageID.506–507.  The reports also stated that, in addition to assaulting Lawrence, Petitioner assaulted another prisoner at the jail, but the incident occurred a week before his original sentencing.  Id. at PageID.522–523.

Petitioner's claims concerning the presentation of this testimony fail for two reasons.  First, he can point to no federal constitutional rule that prevents the prosecution from presenting other-acts evidence to support its argument that he was also guilty of the charged violation.  See Bey v. Bagley, 500 F. 3d 514, 519 (6th Cir. 2007); Estelle, 502 U.S. at 72 (explaining that the Supreme Court's habeas powers did not permit the Court to reverse a state-court conviction based on a belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law); Dowling v. United States, 493 U.S. 342, 352–353 (1990) (determining that the admission at the defendant's bank robbery trial of "similar acts" evidence that the defendant had subsequently been involved in a house burglary for which he had been acquitted did not violate due process). Moreover, evidentiary rules that normally limit the admission of other-acts evidence at criminal trials, such as Federal Rule of Evidence 404(b), do not apply to a probation revocation hearing.  See MCR 6.445(E)(1).

Second, to demonstrate entitlement to relief, a habeas petitioner must demonstrate that the alleged error had a "substantial and injurious effect or influence" on the verdict.  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993) (punctuation modified).  The trial court specifically stated that it did not consider the other allegations of misconduct in determining that Petitioner violated the terms of his probation, stating "all of the other stuff is not relevant, why he was given 68 misconducts, why he made threats to anybody else has no bearing."  5/2/12 Tr. at PageID.620.

Therefore, Petitioner fails to demonstrate that the admission of this other-acts evidence affected the outcome of the hearing, and the claim is without merit.

### 7. Sufficiency of Evidence at Probation Violation Hearing (Claims 2, 28, and Supp. 5)

Petitioner asserts that insufficient evidence was presented at his probation violation hearing. He asserts that the jail video does not establish that an assault occurred.

While the Supreme Court has not specifically held that due process requires sufficient evidence to support the revocation of parole or probation, it has suggested as much. See Black v. Romano, 471 U.S. 606, 615–616 (1985) ("The decision to revoke Romano's probation satisfied the requirements of due process. In conformance with Gagnon and Morrissey, the State afforded respondent a final revocation hearing. The courts below concluded, and we agree, that there was sufficient evidence to support the state court's finding that Romano had violated the conditions of his probation."). Though the Supreme Court has not stated the requisite burden for proving a probation violation, proof beyond a reasonable doubt is not required. See United States v. Knights, 534 U.S. 112, 120 (2001) (citing Minnesota v. Murphy, 465 U.S. 420, 435 n.7 (1984) ("[T]here is no right to a jury trial before probation may be revoked"); 18 U.S.C. § 3583(e) (setting a "preponderance of the evidence" standard for probation violations)).

As in federal criminal proceedings, the prosecutor bears the burden of establishing a probation violation by a preponderance of the evidence under Michigan law, and the normal rules of evidence for criminal trials do not apply. People v. Ison, 346 N.W.2d 894 (Mich. Ct. App. 1984); MCR 6.445(E)(1). Evidence is considered sufficient to sustain a conviction for a probation violation if, when viewed in the light most favorable to the prosecution, it would enable a rational trier of fact to conclude that the essential elements of the charge were proven by a preponderance of the evidence. Ison, 346 N.W.2d at 897. The burden of showing something by a preponderance

of the evidence "simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before [the trier of fact] may find in favor of the party who has the burden to persuade the judge of the fact's existence." In re Winship, 397 U.S. 358, 371–372 (1970) (Harlan, J., concurring) (punctuation modified).

The prosecutor established the probation violation by a preponderance of the evidence. Lawrence testified that Petitioner assaulted him at the jail by putting him in a chokehold and lifting him off the floor. 5/2/12 Tr. at PageID.527–531. According to Lawrence, he felt that he was close to passing out, and Petitioner released him only when a guard yelled. Id. at PageID.531. The two had been joking around before the assault, but the assault was not part of the joking around. Id. The prosecution played a video of the incident for Lawrence, and he described what the video showed for the court. Id. at PageID.536–538. After viewing the video, the court chose to believe Lawrence's testimony, stating "Well, obviously an assault took place. There is a no question Mr. LaPine put his arm around Mr. Lawrence's neck, back to back, and picked him off the ground." Id. at PageID.618. The court found that the testimony of the other two prisoner witnesses was not credible. Id. at PageID.619–620. It also found that "LaPine did in fact commit an assault and battery upon Mr. Lawrence . . . by a preponderance of the evidence" and thereby violated his probation. Id. at PageID.620.

The trial court's determination was based on its view of the credibility of the witnesses and its review of the video evidence. In reviewing the sufficiency of the evidence, this Court will not re-weigh such determinations. See Marshall v. Lonberger, 459 U.S. 422, 434 (1983); United States v. Farley, 2 F.3d 645, 652 (6th Cir. 1993) (explaining that "attacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence"). The claim is without merit.

### 8.   Failure to Call Defense Witnesses at Revocation Hearing (Claims 2, 10, and 13)

Petitioner asserts that he was denied the effective assistance of counsel when his attorney failed to call Mike Cabliegh, Teddy Krogh, Chris Tallentino, Jason McGorie, and Detectives Smith and Hall as defense witnesses at the probation revocation hearing.

This claim was raised in Petitioner's pro se application for leave to appeal that he filed in the Michigan Court of Appeals following the probation revocation hearing.   Mich. Ct. App. 313548 at PageID.871, 903–905 (Dkt. 8-24).   In that appeal, Petitioner asserted that Lawrence told Cabliegh and Krogh that Lawrence lied about the assault to get out of jail sooner.   Id. at PageID.903.   Petitioner stated that Tallentino would have testified that Lawrence assaulted Petitioner and that Lawrence plotted with Donnal to testify falsely against Petitioner.   Id. at PageID.904.   Petitioner claimed that McGorie would have testified that Lawrence changed his story to avoid being charged with assault himself.   Id.   Petitioner also asserted in a conclusory fashion that Detective Smith "would have testified in a way that would have impeached Lawrence and Donnal, undermining their credibility and bolstering Defendant's case."   Id.   And he stated that Detective Hall would have testified that Petitioner did not influence Donnal's initial written statement and that Hall knew about additional exculpatory video footage.   Id.   The Michigan Court of Appeals denied Petitioner's appeal "for lack of merit in the grounds presented."   Id. at PageID.866.

Significantly, Petitioner's allegations were not accompanied by any affidavits or other offer of proof.   Petitioner also failed to assert when these witnesses allegedly came forward with this information and failed to indicate that they were willing to testify in his defense at the time of the hearing.   Nor did Petitioner provide the state court with allegations about the extent of his counsel's investigation or his counsel's reason for not presenting these additional defense witnesses.

To prevail on a claim of ineffective assistance of counsel, a petitioner must show both that his or her counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687–688 (1984). To show deficiency, a petitioner must establish that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. To show prejudice, a petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

When the claim involves the alleged failure to call defense witnesses, "[a] defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991). Petitioner did not offer the state court with any offer of proof as to his claims about the uncalled witnesses. It is well-established that conclusory allegations of ineffective assistance of counsel, without evidentiary support, are insufficient to warrant relief. See, e.g., Cross v. Stovall, 238 F. App'x 32, 39–40 (6th Cir. 2007); Workman v. Bell, 178 F.3d 759, 771 (6th Cir. 1998); see also Washington v. Renico, 455 F.3d 722, 733 (6th Cir. 2006) (holding that bald assertions and conclusory allegations do not provide a basis for an evidentiary hearing on habeas review).

Petitioner also failed to assert any facts regarding his attorney's decision not to call these additional witnesses. Counsel called another prisoner, Evans, to testify that Evans thought Petitioner and Lawrence were engaged in horseplay, and counsel called a police officer to present testimony that the prisoners were motivated to testify against Petitioner because Petitioner agreed to act as a jail-house informant. Strickland commands that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689. Because "[t]here are countless ways to provide effective assistance

in any case," <u>Strickland</u> places the burden on the petitioner to prove otherwise.  <u>Id.</u>  Defense counsel elicited testimony from Marra and Lawrence that Lawrence was released early after the assault, and he elicited further testimony that Lawrence had gotten into a fight with another inmate. 5/2/12 Tr. at PageID.515-520, 551–552.  Petitioner offers no argument why his counsel's decision to present the two defense witnesses and to cross-examine the prosecutor's witnesses on these matters, rather than call additional witnesses, was professionally incompetent.

The Michigan Court of Appeals, therefore, reasonably summarily rejected Petitioner's ineffective assistance claim in light of Petitioner's failure to offer affidavits or other evidence that the uncalled witnesses would have testified favorably to the defense or offer evidence related to the reasons for his counsel's actions.  <u>See</u> <u>Clark v. Waller</u>, 490 F.3d 551, 557 (6th Cir. 2007); <u>Tinsley v. Million</u>, 399 F.3d 796, 810 (6th Cir. 2005).

Petitioner asserts that he is entitled to an evidentiary hearing on his ineffective assistance claim.  A federal court's review of a state court decision under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits" because the federal habeas scheme was designed to leave "primary responsibility with the state courts."  <u>Cullen v. Pinholster</u>, 563 U.S. 170, 181–182 (2011).  Consequently, "[i]t would be contrary to that purpose to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively <u>de novo</u>."  <u>Id.</u> Where, as here, a state court has issued a decision on the merits, "district courts are precluded from conducting evidentiary hearings to supplement existing state court records."  <u>Ballinger v. Prelesnik</u>, 709 F.3d 558, 561 (6th Cir. 2013).  The state court here reasonably rejected Petitioner's claim of ineffective assistance of counsel on the merits precisely because he failed to proffer sufficient evidence to support the claim or to support a hearing.  No hearing was required without

a sufficient proffer of evidence.  See Washington, 455 F.3d at 733. Under Cullen, Petitioner is,

therefore, also prohibited from presenting new evidence here to support this claim.  563 U.S. at

181–182.  Petitioner fails to demonstrate entitlement to relief with respect to this claim.

9. **Suppression of Exculpatory Evidence and Presentation of Perjured Testimony at Revocation Hearing (Claims 9, 22, 23, 24, 25, 27, Supp. 1, and Supp. 2)**

Petitioner asserts that additional video footage from the jail showing that he did not assault

Lawrence was suppressed, that the part of the video that was presented in court was altered, that

statements by witnesses were withheld, that jail records were altered, and that Lawrence and

Donnal perjured themselves at the revocation hearing.

These claims implicate two lines of Supreme Court precedent.  First, the prosecution's

suppression of evidence favorable to the accused violates due process where the evidence is

material either to guilt or to punishment, irrespective of the good faith or bad faith of the

prosecution.  Brady v. Maryland, 373 U.S. 83, 87 (1963).  There are three components of a Brady

violation: (i) "[t]he evidence at issue must be favorable to the accused, either because it is

exculpatory, or because it is impeaching"; (ii) "that evidence must have been suppressed by the

State, either willfully or inadvertently"; and (iii) "prejudice must have ensued."  Strickler v.

Greene, 527 U.S. 263, 281–282 (1999).  Prejudice is established if there is a reasonable probability

that, had the evidence been disclosed to the defense, the result of the proceeding would have been

different.  Id. at 296.

Second, prosecutors are prohibited from knowingly presenting false evidence.  Miller v.

Pate, 386 U.S. 1 (1967). "[D]eliberate deception of a court and jurors by the presentation of known

false evidence is incompatible with rudimentary demands of justice."  Giglio v. United States, 405

U.S. 150, 153 (1972).  "The same result obtains when the State, although not soliciting false

evidence, allows it to go uncorrected when it appears."  Napue v. Illinois., 360 U.S. 264, 269

(1959).  But, as with <u>Brady</u> claims, a conviction obtained through the knowing use of perjured testimony or the failure to correct known false testimony must be set aside only if the false testimony, within reasonable likelihood, affected the outcome of the trial.  <u>Giglio</u>, 405 U.S. at 154; <u>Amos</u>, 683 F.3d at 728.

As with Petitioner's ineffective assistance claim premised on his counsel's failure to call defense witnesses at the probation revocation hearing, he first made his allegations of suppression of exculpatory evidence and presentation of perjured testimony to the Michigan Court of Appeals in his application for leave to appeal following the hearing.  Those claims were similarly unaccompanied by an evidentiary proffer.  Mich. Ct. App. 313548 at PageID.896–900, 902–903.  Petitioner then renewed his claims in his motion for relief from judgment that he filed in the trial court after the present case was stayed.  The trial court appointed counsel for Petitioner, and counsel obtained all of the video footage of the incident between Petitioner and Lawrence that the Sheriff possessed.  <u>See</u> 10/4/16 Mot. Tr. (Dkt. 17-15); 12/6/16 Mot. Tr. (Dkt. 17-7).  Counsel also filed an affidavit from Lawrence Lee, another inmate at the jail at the time of the incident, who stated that Lawrence told Lee he planned to testify falsely against Petitioner to get out of jail early.  Mich. Ct. App. 339285 at PageID.1668.  Lee also stated that he heard the probation agent tell Lawrence that the prosecutor would not object to Lawrence's early release if Lawrence cooperated.  <u>Id.</u> at PageID.1669.  Counsel submitted a recanting affidavit from Donnal that stated that Donnal testified falsely against Petitioner to help Lawrence.  <u>Id.</u> at PageID.1670.

The trial court denied the motion for relief from judgment, finding that Donnal's recanting affidavit was inherently suspect and that no evidentiary hearing was necessary because regardless of the witnesses' credibility, the video showed that Petitioner assaulted Lawrence.  1/17/17 Mot. Tr. at PageID.1588–1589.

36

The decision of the court did not contravene the established Supreme Court standard. Donnal's recanting affidavit was correctly regarded as inherently suspect by the trial court. See United States v. Willis, 257 F.3d 636, 645 (6th Cir. 2001) ("[A]ffidavits by witnesses recanting their trial testimony are to be looked upon with extreme suspicion.") (punctuation modified). This is especially so in light of Donnal's testimony at the revocation hearing that Petitioner previously intimidated him into making a false exculpatory statement. 5/2/12 Tr. at PageID.562–563.

The trial court also rejected Petitioner's claim because the video itself showed by a preponderance of the evidence that Petitioner assaulted Lawrence, regardless of whether additional evidence could have been presented to impeach Lawrence. This Court cannot second-guess the state court's determination that the video shows an assault. A state court's factual determinations are presumed correct on federal habeas review. See 28 U.S.C. § 2254(E)(1); Lanton v. Lafler, 2013 WL 1364152, at *14 (E.D. Mich. April 4, 2013) ("The factual finding by the trial court that the enhanced video does not show what Petitioner claims it shows is presumed correct.").

In any event, and contrary to Petitioner's assertions, defense counsel knew that Lawrence had been released early from jail after the assault. Counsel questioned both Marra and Lawrence regarding the timing of the early release and Lawrence's letter requesting release after the assault. 5/2/12 Tr. at PageID.513–514, 520, 551–552.

The trial court's rejection of this claim was reasonable in light of the evidence proffered to it. Therefore, Petitioner has failed to demonstrate entitlement to habeas relief on this claim.

**10. Denial of Jail Credit and Good Time Following Probation Violation and Assessment of Fees and Costs (Claims 8, 17, and 18)**

Petitioner asserts that, under Mich. Comp. L. § 51.282(2), he was entitled to jail credit and good time on his prison sentence after his probation revocation.[2] He also contends that he was erroneously assessed fees and costs. These claims are not cognizable on federal habeas review because they challenge the state court's interpretation and application of its own sentencing and credit laws. "A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only." Howard v. White, 76 F. App'x 52, 53 (6th Cir. 2003). Claims challenging whether or how much jail credit is applied to state sentences under state law are also a matter of state law and not cognizable on federal habeas review. See Kipen v. Renico, 65 F. App'x 958, 959 (6th Cir. 2003) ("[T]he actual computation of [a petitioner's] prison term involves a matter of state law that is not cognizable under 28 U.S.C. § 2254."). Similarly, the alleged erroneous imposition of fines, fees, and costs does not present a cognizable issue on federal habeas review. See Washington v. McQuiggin, 529 F. App'x 766, 772–773 (6th Cir. 2013); Michaels v. Hackel, 491 F. App'x 670, 671 (6th Cir. 2012). Therefore, Petitioner's claims regarding jail credit and good time credits following his probation revocation and the assessment of fees and costs do not present a basis for habeas relief.

**11. Inaccuracies in Presentence Investigation Report (Claim 19)**

Petitioner asserts that his original presentence investigation report contained factual inaccuracies that were stricken after his plea but appeared again in the report generated after the probation revocation. He states that the errors were never removed from the report.

---

[2] According to the sentencing transcript and judgment of sentence, Petitioner was given 363 days of jail credit, but he was not given good time credits. 5/29/12 Tr. at PageID.632–633; J. of Sentence, in Mich. Ct. App. 313548 at PageID.907.

At the first sentencing proceeding, defense counsel said he would not be "quibbling over [sentencing guidelines] issues as far as sentencing."  10/11/11 Tr. at PageID.390.  The alleged errors, instead, related to background information contained in the report, and the court indicated it would allow the changes.  Id. at PageID.390–395.  On appeal, Petitioner did not seek resentencing in the state court on the basis of the uncorrected errors.  See Mich. Ct. App. 313548 at PageID.893–894.  Rather, he asserted that he was entitled to have a corrected report issued.  Id. The claim, therefore, does not state a basis for granting habeas relief.  "There is no federal constitutional right to a presentence investigation and report."  Bridinger v. Berghuis, 429 F. Supp. 2d 903, 909 (E.D. Mich. 2006) (punctuation modified).  The claim is without merit.

### 12. Judicial Bias (Claims 21, 25, and Supp. 4)

Petitioner asserts that the judge who ruled on his motion for relief from judgment was biased against him because the judge's father presided over Petitioner's plea and probation revocation hearing.

"Due process guarantees an absence of actual bias on the part of a judge."  Williams v. Pennsylvania, 136 S. Ct. 1899, 1905 (2016) (punctuation modified).  Judges should recuse themselves when "the likelihood of bias" is "too high to be constitutionally tolerable."  Id. at 1903 (punctuation modified).  Courts determine bias through an objective lens, asking whether an "average judge" under the factual circumstances presented is likely to be neutral or whether there exits an unconstitutional "potential for bias."  Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 881 (2009).

Under certain factual scenarios, the probability of actual bias is too high to be constitutionally tolerable.  Withrow v. Larkin, 421 U.S. 35, 47 (1975).  "Among these cases are those in which the adjudicator has a pecuniary interest in the outcome and in which he has been

39

the target of personal abuse or criticism from the party before him." Id. A mere family relationship, however, is insufficient by itself to overcome the presumption of judicial integrity— even when a judge's relative has a financial interest in the outcome. Fero v. Kerby, 39 F.3d 1462, 1479 (10th Cir. 1994); see also Dyas v. Lockhart, 705 F.2d 993, 996 (8th Cir. 1983) (finding no bias where the trial judge was the uncle of the prosecuting attorney and the brother and father of two deputy prosecuting attorneys).

Petitioner fails to show that the familial relationship between the successor trial judge and the former judge was such that it rendered the successor trial judge biased against him. The potential for bias was not so high that it was constitutionally intolerable for the successor trial judge to hear Petitioner's motion for relief from judgment. The claim is without merit.

Because none of Petitioner's claims merits relief, the Court denies the petition.

### C. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. Fed. R. App. P. 22. Rule 11 of the Rules Governing Section 2254 Proceedings requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." R. Governing § 2254 Proceedings 11. A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (punctuation modified).

The Court finds that reasonable jurists would not debate the Court's conclusion that none of the claims in the habeas petition warrants relief because the claims are without merit. Therefore, the Court denies a certificate of appealability.

### D. Leave to Proceed **In Forma Pauperis** on Appeal

A court may grant an application for leave to proceed in forma pauperis on appeal if it finds that an appeal can be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(2). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. Foster v. Ludwick, 208 F. Supp. 2d 750, 764–765 (E.D. Mich. 2002). The Court finds that an appeal could not be taken in good faith. Therefore, it denies Petitioner leave to proceed in forma pauperis on appeal.

### IV. CONCLUSION

For the reasons set forth above, the Court denies the petition for writ of habeas corpus, declines to issue a certificate of appealability, and denies Petitioner leave to proceed in forma pauperis on appeal.

SO ORDERED.

Dated: January 25, 2022                          s/Mark A. Goldsmith
      Detroit, Michigan                        MARK A. GOLDSMITH
                                                United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 25, 2022.

                                            s/Karri Sandusky
                                            KARRI SANDUSKY
                                            Case Manager